UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Laura Duffek, *on behalf of herself, and all others similarly situated*, | File No. 21-cv-01413 (ECT/BRT) |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| iMedia Brands, Inc., | |
| Defendant. | |

---

Bert Black and Lauren A. D'Cruz, Schaefer Halleen, LLC, Minneapolis, MN, for Plaintiff Laura Duffek.

Kristina H. Kaluza, Dykema Gossett PLLC, Minneapolis, MN; and James Hermon, Dykema Gossett PLLC, Detroit, MI, for Defendant iMedia Brands, Inc.

---

Plaintiff Laura Duffek alleges that Defendant iMedia Brands, Inc. violated the Worker Adjustment and Retraining Notification (WARN) Act when it terminated her employment in March 2020. She seeks to certify a class of 15 former Minnesota-based iMedia employees (including her) whose employment iMedia terminated around that same time. Duffek's class-certification motion will be denied because the class is not so numerous that joinder of all members is impracticable. If that weren't so, the motion would be denied because Duffek has asserted a separate, independent age-discrimination claim, and the better answer is that her assertion of this claim makes her an inadequate class representative.

*Background facts.* iMedia "operates a cable, satellite, and broadcast home shopping television network" through a subsidiary, ShopHQ. Compl. [ECF No. 2] ¶ 7. iMedia maintains its "principal executive office" in Eden Prairie, Minnesota. *Id.* Before the terminations at issue in this suit, iMedia had 493 employees at its Minnesota office. D'Cruz Aff. Ex. 2 [ECF No. 29-1 at 9]. Duffek "was an on-air guest and host." Compl. ¶ 6. Though she worked for iMedia or its predecessors in various capacities for many years, "she worked as a full-time employee" from sometime during 2019 until her termination on March 24, 2020. *Id.* ¶ 12. That day, Duffek received a termination letter that reads as follows:

> Due to significant and recent unforeseeable business circumstances, including the substantial market and financial impact of the global spread of COVID-19 (commonly referred to as "coronavirus"), iMedia Brands, Inc. ("iMedia") has made the decision to implement a workforce reduction. Your employment with iMedia will terminate effective today, March 24, 2020.
>
> While we acknowledge that, under normal circumstances, iMedia would be required under the Worker Adjustment and Retraining Notification (WARN) Act to provide 60 days' advance notice to employees covered by the WARN Act of a workforce reduction of this nature, iMedia could not provide such notice that far in advance due to the significant and recent unforeseeable business circumstances described above. Specifically, the recent material market and financial impact of the global spread of the coronavirus and the resulting harm to iMedia's financial wellbeing, as well as other significant developments over the course of the last several days, led to the decision to institute this workforce reduction.

*Id.* ¶ 16; D'Cruz Aff. Ex. 1 [ECF No. 29-1 at 2]. In all, 108 Minnesota employees were terminated on March 24. D'Cruz Aff. Ex. 2 [ECF No. 29-1 at 10]; *see also* Compl. ¶ 15.

Another 34 were terminated on April 8 or 15, 2020, and another 17 on April 24, 2020, all for the reasons described in the termination letter Duffek received. D'Cruz Aff. Ex. 4 [ECF No. 29-1 at 22]; D'Cruz Aff. Ex. 5 [ECF No. 29-1 at 26]; *see also* Compl. ¶¶ 3–4.

*Duffek's WARN Act claim.* In her Complaint, Duffek asserts a single claim: that these terminations violated the WARN Act, 29 U.S.C. § 2101, *et seq.* Under the Act, "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" to "the affected employees" and "the State." 29 U.S.C. § 2102(a); *see also Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 826–27 (8th Cir. 2016). If an employer violates § 2102 by not providing the required notice, the employer is liable to each eligible employee for up to 60-days' worth of back pay and benefits, as well as the cost of medical expenses incurred that would have been covered by an employee benefit plan. 29 U.S.C. § 2104. Duffek alleges that iMedia's March and April 2020 employee terminations were a "mass layoff" triggering the WARN Act's protections but that iMedia failed to comply with these requirements. Compl. ¶¶ 44–50. Duffek—for herself and the would-be class—seeks to recover "back pay and associated benefits" and attorney fees. *Id.* ¶ 51 and at 12 ¶¶ a, b, c, and e.

*Class certification under Rule 23 generally.* "A party seeking class certification 'must affirmatively demonstrate [their] compliance' with Rule 23." *Hudock v. LG Elecs. U.S.A., Inc.*, 12 F.4th 773, 775 (8th Cir. 2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). "The party must show that the proposed class satisfies Rule 23(a)'s threshold requirements of numerosity, commonality, typicality, and adequacy, and that the class fits within 'one of the three subsections of Rule 23(b).'" *Stuart v. State Farm Fire &*

*Cas. Co.*, 910 F.3d 371, 374 (8th Cir. 2018) (quoting *Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1155 (8th Cir. 2017)). "District courts must engage in a 'rigorous analysis' to determine whether the requirements of Rule 23 have been satisfied." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018) (citation omitted).

*Rule 23's numerosity requirement.* A class cannot be certified unless it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specific rules govern the required size of a class, and what constitutes impracticability depends upon the facts of each case." *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (cleaned up); *see also Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982) ("No arbitrary rules regarding the necessary size of classes have been established."). "The most obvious factor, of course, is the number of potential class members," and "[o]ther relevant factors include the nature of the action, the size of individual claims, the inconvenience of trying individual suits, and any other factor that sheds light on the practicability of joining all putative class members." *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 409 (D. Minn. 2007) (citing *Paxton*, 688 F.2d at 559–60); *see also Portz*, 297 F. Supp. 3d at 944 ("Practicality of joinder depends on such factors as the size of the class, the ease of identifying its members and determining their addresses, the facility of making service on them if joined, their geographic dispersion and whether the size of the individual claims is so small as to inhibit individuals from separately pursuing their own claims.") (cleaned up).

*Duffek's proposed WARN Act class of 15 is not so numerous that joinder of all members is impracticable.* Though there is no bright-line rule setting a minimum for class

4

size, certification of a class of 15 members would be an outlier. Duffek cites one case where a class of 15 was certified. Pl.'s Mem. in Supp. [ECF No. 27] at 9–10 (citing *Manning v. Princeton Consumer Disc. Co.*, 390 F. Supp. 320, 324 (E.D. Pa. 1975), *on reconsideration*, 397 F. Supp. 504 (E.D. Pa. 1975), *aff'd*, 533 F.2d 102 (3d Cir. 1976)).[1] *Manning* is not persuasive. The numerosity issue was not the subject of meaningful consideration.[2] And *Manning* certified only a Rule 23(b)(2) injunctive-relief class, preventing the plaintiff from "press[ing] any monetary claims except her own." 390 F. Supp. at 324. By contrast, iMedia cites cases where proposed classes of 21 or fewer

---

[1]  Duffek also cites *Pole v. Estenson Logistics, LLC*, No. 15-cv-07196 DDP (EX), 2016 WL 4238635, at *3 (C.D. Cal. Aug. 10, 2016). That case merely recognized that "[t]he Ninth Circuit has typically required at least fifteen members to certify a class" and went on to address whether a class of fifty-one should be certified. *Id.* at *3–4. If anything, saying that 15 class members are "typically required" for certification seems to describe a floor. It isn't the same thing as saying that a class of 15 typically should be certified.

[2]  The entirety of that court's Rule 23(a) analysis was as follows:

> Plaintiff has satisfied the requirements of 23(a)(1-4) and (b)(2) as to this class. Defendants' answers to interrogatories show that between June, 1973 and June, 1974 Springfield Dodge sold cars to 14 persons besides plaintiff which were financed under circumstances similar to plaintiff's, including the payment of a referral fee by Princeton. This evidence satisfies the numerosity, typicality, and common question requirements, 23(a)(1-3), as well as the 'grounds generally applicable' requirement of (b)(2). As for the adequacy of plaintiffs' representation, 23(a)(4), we find no cause to believe that plaintiff's individual interests conflict with those of any class member, and we find that plaintiff's counsel is experienced in litigation similar to the present one.

*Manning*, 390 F. Supp. at 324. This does not reflect the rigorous analysis required by more recent binding precedents.

members were not certified, including two Eighth Circuit cases. Def.'s Mem. in Opp'n [ECF No. 35] at 6–7. Regardless, cases brought by 15 or so joined plaintiffs are not uncommon. *E.g.*, *Hajiabdi v. Metro. Transp. Network, Inc.*, No. 21-cv-268 (ECT/ECW), 2021 WL 3885653 (D. Minn. Aug. 31, 2021) (joining 14 plaintiffs). The bottom line is that the number of members in Duffek's proposed class—the "most obvious factor," *Alberts*, 245 F.R.D. at 409—leans strongly against finding that Rule 23(a)(1)'s numerosity requirement is met. Other factors don't change things. The record does not include particular information showing the value of each putative class member's claim. The safer hypothesis is that 60-days' worth of back pay and benefits (or roughly one-sixth of each potential class member's annual compensation) is enough to motivate each person to pursue her or his own WARN Act claim.[3] It is doubtful that prospective class members are geographically dispersed. All worked in iMedia's Minnesota offices as recently as March 2020. Regardless, iMedia has produced detailed information concerning these individuals, making their identification and location quite feasible. Duffek identifies no particular inconveniences associated with trying the case if all 15 potential class members were joined as plaintiffs. Finally, Duffek has identified no jurisdictional or like barrier to joining one or more of the potential class members. The better answer is that Rule 23(a)(1)'s numerosity requirement has not been met here.[4]

---

[3] At the hearing, Duffek indicated that she received information from iMedia concerning potential class members' salaries after class-certification briefing was complete but had yet to calculate potential WARN Act damages based on this information.

[4] Duffek also indicated at the hearing that the potential class might encompass a few more individuals if the class definition were expanded to include iMedia employees

*Rule 23's adequacy requirement.* A representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The party moving for certification bears the burden to prove that she will adequately represent the class," and "[t]he district court must decide whether Rule 23(a)(4) is satisfied through balancing the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." *Rattray v. Woodbury Cnty.*, 614 F.3d 831, 835 (8th Cir. 2010) (cleaned up). "Conflicts between the representatives and the class and among the class members can defeat class certification." *Taqueria El Primo LLC v. Ill. Farmers Ins. Co.*, --- F.Supp.3d ----, No. 19-cv-3071 (JRT/BRT), 2021 WL 6127880, at *13 (D. Minn. Dec. 28, 2021) (citations omitted). "Perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. To forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767 (8th Cir. 2020) (cleaned up) (quoting *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012)), *cert. denied*, --- U.S. ---, 141 S. Ct. 2551 (2021). As with all the requirements of Rule 23(a), a district court must "conduct a 'rigorous analysis,'" and "[t]he inquiry into adequacy of representation, in particular, requires the district court's close scrutiny, because the purpose of Rule 23(a)(4) is to ensure due process for absent class members, who generally are bound by a judgment rendered in a class action." *Rattray*, 614 F.3d at 835 (cleaned up).

---

terminated in February 2020. Given this case's facts, the addition of a few (or even several) more potential class members would not change the numerosity analysis.

*Duffek could not adequately protect the proposed class's interests in view of her separate age-discrimination claim.* Duffek filed an individual age-discrimination charge with the Minnesota Department of Human Rights and Equal Employment Opportunity Commission. Def.'s Mem. in Opp'n at 2, 13–14; Pl.'s Reply Mem. [ECF No. 36] at 2, 8; Duffek Aff. [ECF No. 37] ¶ 2. As of the hearing on this motion, that charge was pending with the agencies. *See* Pl.'s Reply Mem. at 9; Duffek Aff. ¶ 2. iMedia argues that Duffek has a conflict of interest in her simultaneous pursuit of class and individual claims, given that iMedia will not "resolve Duffek's litigation against it piecemeal – any settlement of the age claim will come part and parcel with settlement of the WARN claim and vice versa." Mem. Opp'n at 14.[5] Duffek argues that such a conflict is hypothetical and speculative, and further highlights that there is no overlap in the damages available for her WARN Act claim and discrimination claim. Reply Mem. at 11. This question presents a relatively close call. Cases addressing this scenario are a mixed bag. *Compare Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 678 (N.D. Ohio 1995) (concluding that, because most or all named plaintiffs "are also bringing an identical, individual cause of action in state court, there is a significant risk that these plaintiffs will not adequately represent those absent class members who have not individually joined the parallel state court action," specifically

---

[5] iMedia also says Duffek "used the threat of" a class claim to "gain an advantage" or "leverage a settlement" in her individual age-discrimination claim, then proceeded with the administrative filings and this action when iMedia "refused to pay a king's ransom to settle" the discrimination case. Mem. Opp'n at 2, 14. There is no record evidence of what transpired between the parties. In view of the determination that Duffek is not an adequate class representative based on the conflict's presence, her pre-suit conduct need not be addressed.

8

"with respect to settlement and dismissal decisions," and finding that the named plaintiffs were not adequate class representatives); *Levias v. Pac. Mar. Ass'n*, No. 08-cv-1610-JPD, 2010 WL 358499, at *6 (W.D. Wash. Jan. 25, 2010) (citing *Kurczi*) (concluding that plaintiffs were inadequate representatives because, among other reasons, one plaintiff had a separate lawsuit against some defendants "that could potentially create a conflict," since plaintiff presumably had a greater financial interest in his individual suit, and therefore "[t]he potential exists for a favorable settlement in the individual action that might undermine the loyalty of [plaintiff] to the putative class in this matter," and "[a]t a minimum, a favorable settlement in the individual action could provide a disincentive to vigorously prosecute this action on behalf of the class."); *with Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-cv-3312 (RA), 2016 WL 5338551, at *5 (S.D.N.Y. Sept. 23, 2016) (holding that conflict created by named plaintiffs' pursuit of separate discrimination claims was not "so 'fundamental'—as opposed to 'merely speculative or hypothetical'—so as to render the proposed class representatives inadequate"). I conclude that iMedia has the better argument. Duffek confirmed at the hearing that, once she exhausts her administrative remedies, she intends to pursue the discrimination claim. At some point, then, she almost certainly will have to decide whether to accept a global settlement proposal. Accepting that her intentions are appropriate and genuine, *see* Duffek Aff. ¶¶ 3–6 (averring that she will vigorously pursue the class claims and that her discrimination claim does not compromise her ability to pursue class claims), it remains difficult to envision how Duffek might make that decision without compromising her duty to adequately protect the class. A larger offer on the age-discrimination claim would place

9

Duffek in the position of perhaps accepting a smaller settlement of the WARN Act claim. An unacceptably low offer on the age-discrimination claim might prompt Duffek to reject an otherwise acceptable settlement of the WARN Act claim. Either scenario is too likely to disregard. The better answer, then, is that these conflicts are real, not hypothetical, and make Duffek an inadequate class representative.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Plaintiff Laura Duffek's Motion for Class Certification [ECF No. 33] is **DENIED**.

Dated: July 1, 2022

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court